**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

MISAEL PEREZ HERNANDEZ,

     Petitioner,

v.                                                                      No. 2:26-cv-00170-DHU-LF

HECTOR RIOS, Warden, Otero County Processing Center;
MARY DE ANDA-YBARRA, Field Office Director, El
Paso Field Office, United States Immigration and Customs
Enforcement; TODD M. LYONS, Acting Director, United
States Immigration and Customs Enforcement; KRISTI NOEM,
Secretary of Homeland Security; and PAMELA JO BONDI,
United States Attorney General; in their official capacities,

     Respondents.

## <u>ORDER GRANTING IN PART HABEAS PETITION</u>

THIS MATTER comes before the Court on Petitioner Misael Perez Hernandez's Verified

Petition for Writ of Habeas Corpus ("Petition"). Doc. 1. Petitioner alleges that he is being

unlawfully detained by Immigration and Customs Enforcement ("ICE") after previously being

paroled into the United States under the Cuban Family Reunification Parole Program ("CFRP

Program"), in violation of the Due Process Clause of the Fifth Amendment. He asks the Court to

order his immediate release. Having carefully considered the parties' briefs, the record, and the

relevant and applicable law, the Court finds that the Petition should be **GRANTED IN PART**.

**I.
BACKGROUND**

Petitioner Misael Perez Hernandez is a native and citizen of Cuba who entered the United

States on September 24, 2008, with a grant of parole under the CFRP Program. *Id.* ¶ 24; Doc. 10

at 2. Petitioner's initial grant of parole expired on September 23, 2009, *see* Doc. 1-4, and Petitioner has not alleged that his term of parole was extended.

During his nearly twenty (20) years in the United States, Petitioner started and managed his own transportation company, and he married a United States citizen and became a parent and stepparent. Doc. 1 ¶¶ 25, 33; Doc. 1-2. In November of 2025, Petitioner was detained by ICE after an encounter with border patrol while driving with his spouse in Texas. Doc. 1 ¶ 28; Doc. 10-3 at 3-4. He was charged as inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I). Doc. 10 at 3. He remains detained at the Otero County Processing Center in Chaparral, New Mexico. Doc. 1 ¶ 10.

Petitioner subsequently filed the instant Petition for Writ of Habeas Corpus ("Petition"). He alleges that the Government has unlawfully classified him as an "applicant for admission," denying him the opportunity for release on bond. Doc. 1 ¶¶ 28, 31, 41. He further argues that this unlawful classification deprives him of his due process rights. *Id.* Petitioner requests a Writ of Habeas Corpus ordering Respondents to release him. *Id.* at 10. Petitioner also requests attorney fees and costs pursuant to the Equal Access to Justice Act ("EAJA"). *Id.* at 11.

Respondents submitted a Motion to Dismiss in response to the Petition. Doc. 10. In the Motion, Respondents ask this Court to dismiss the Petition, first arguing that this Court lacks subject matter jurisdiction over this matter under 8 U.S.C. § 1252 and for lack of ripeness. *Id.* at 10-11. Respondents further argue that, even if the Court has jurisdiction to review the Petition, the "limited" due process rights owed to "arriving aliens" have been met here. *Id.* at 11-12.

Petitioner opposes Respondent's Motion but failed to submit further briefing on the matter.

## II.
## LEGAL STANDARDS

Habeas relief is available when a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). The Fifth Amendment's Due

Process Clause prohibits the Government from depriving any person of liberty without due process of law. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S.Ct. 2491 (2001). The Due Process Clause's protections extend to all persons in the United States, including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693.

The Immigration and Nationality Act ("INA") and its implementing regulations outline the appropriate procedures for the detention and removal of noncitizens without legal status in the United States. "Noncitizens who arrive at a port of entry without a visa or other entry document[s] . . . are deemed 'inadmissible' under 8 U.S.C. § 1182(a)(7)." *Y-Z-L-H v. Bostock*, 792 F.Supp.3d 1123, 1132 n.7 (D. Or. 2025). Once a noncitizen is deemed inadmissible, "the immigration officer must order the noncitizen's removal unless the noncitizen indicates an intention to apply for asylum or fear of persecution." *Id.* (citing 8 U.S.C. § 1225(b)(1)(A)(i)). The government may place the noncitizen into expedited removal proceedings, *see* § 1225(b)(1), or into regular removal proceedings under 8 U.S.C. § 1229(a), *see* § 1225(b)(2).

Two provisions of the INA govern the detention of noncitizens with pending removal proceedings. The first, §1225, "governs the processing of noncitizens at the Nation's borders and ports of entry." *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1236 (10th Cir. 2026). This includes noncitizens subject to expedited removal under § 1225(b)(1) and certain "applicant[s] for admission" seeking admission under § 1225(b)(2). "[I]n the case of [a noncitizen] who is an applicant for admission, if the examining immigration officer determines that [a noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted, the [noncitizen] **shall**

be detained" for removal proceedings, absent some extraordinary circumstances not applicable here. § 1225(b)(2)(A) (emphasis added).

However, under 8 U.S.C. § 1182(d)(5)(A), "applicants for admission may be temporarily released [into the United States] on parole 'for urgent humanitarian reasons or significant public benefit.'" *Jennings v. Rodriguez*, 583 U.S. 281, 288, 138 S.Ct. 830 (2018). The decision to grant parole is determined "on a case-by-case basis" and rests within the discretion of the Secretary of Homeland Security. § 1182(d)(5)(A). Then, "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the [noncitizen] shall forthwith return or be returned to the custody from which he was paroled[.]" *Id.* Termination of parole under these circumstances requires notice, 8 C.F.R. § 212.5(e)(2), unless the noncitizen parolee departs from the United States or the time for which parole was authorized expires, in which cases parole automatically terminates without notice, § 212.5(e)(1).

Pursuant to its authority under § 1182(d)(5)(A), DHS has established various parole programs. Among them is the Cuban Family Reunification Parole Program,[1] which allows certain eligible United States citizens and lawful permanent residents to apply for parole for their family members in Cuba. *The Cuban Family Reunification Parole Program*, U.S. CITIZENSHIP AND IMMIGR. SERVS., https://www.uscis.gov/humanitarian/humanitarian-parole/the-cuban-family-reunification-parole-program. If granted, these family members are permitted to come to the

---

[1] U.S. Citizenship and Immigration Services ("USCIS") issued a Notice in late 2025 announcing the termination of the program. 90 Fed. Reg. 58032 (Dec. 15, 2025). However, the termination was preliminarily enjoined by a U.S. District Court in Massachusetts to the extent it terminates previously granted parole and revokes work authorization issued to noncitizens paroled into the United States pursuant to the program prior to their originally stated parole expiration dates. *See Doe v. Noem*, 817 F.Supp.3d 27, 59 (D. Mass. 2026). The preliminary injunction and ongoing litigation related to the program has no bearing on this case, where Petitioner's parole under the program appears to have expired in 2009.

United States without waiting for their immigrant visas to become available and, once here, to apply for work authorization while they wait to apply for lawful permanent resident status. *Id.*

### III.
### DISCUSSION

**A. The Court Has Jurisdiction to Consider the Constitutionality of Petitioner's Detention**

Respondents first argue that this Court lacks subject matter jurisdiction to review determinations made under § 1225(b)(1). Doc. 10 at 10-11. The INA strips courts of jurisdiction to review "any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to [§] 1225(b)(1)." 8 U.S.C. § 1252(a)(2)(A)(i). Additionally, no court shall have jurisdiction to review "a decision by the Attorney General to invoke the provisions" of § 1225(b)(1), "the application of [the] section, or "procedures and policies adopted by the Attorney General to implement" the section. *Id.* § 1252(a)(2)(A)(ii)-(iv). Although judicial review of "determinations made under § 1225(b)(1) is available in habeas proceedings," the review is limited to the following determinations: 1) whether the petitioner is a noncitizen; 2) whether the petitioner was ordered removed under § 1225(b)(1); and 3) whether the petitioner can prove by a preponderance that he is a noncitizen lawfully admitted for permanent residence, is lawfully admitted as a refugee, or has been granted asylum. *Vaupel v. Ortiz*, 244 F. App'x 892, 894 (10th Cir. 2007) (citing § 1252(e)(2)(A)-(C)).

While Respondents correctly assert that the Court does not have jurisdiction to review a § 1225(b)(1) determination, they mischaracterize the nature of Petitioner's challenge and seek to broaden § 1252's application beyond what the statutory language permits. As an initial matter, in *Vaupel*, the Tenth Circuit found it lacked jurisdiction to review an expedited removal order but did not address the appellant's challenge to his continued detention, finding it moot. *Id.* at 896. *Vaupel*

therefore does not stand for the proposition that challenges to mandatory detention under § 1225 are beyond this Court's power to review. In fact, reading § 1252 alongside § 1225 makes clear that its jurisdiction-stripping language is focused on discretionary determinations as to admissibility and removal, not the application and legality of § 1225's mandatory detention provision. The Government seems to acknowledge this, stating that "a § 1225(b)(1) determination is the finding of inadmissibility and order for expedited removal of an arriving alien by an immigration officer." Doc. 10 at 2 n.2. This reading is also in accord with the Supreme Court's characterization of § 1252 as aimed at protecting the Executive's *discretion* in immigration matters. *See Dep't of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 112, 140 S.Ct. 1959 (2020); *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 486-87, 119 S.Ct. 136 (1999). Petitioner contests the legality of his mandatory detention under the Due Process Clause, not any discretionary decision made by the Attorney General as to Petitioner's admissibility, credible fear of persecution, or entitlement to asylum. These are the "determinations" that §§ 1252(a)(2)(A) and (e) seek to insulate from judicial review, and they are not implicated here.

Specifically, there is no final order of removal against Petitioner, Petitioner has not sought asylum, and Petitioner does not challenge any procedures or policies adopted by the Attorney General to implement the provisions of § 1225(b)(1). Subsections (i), (iii), and (iv) of § 1252(a)(2)(A) and § 1252(a)(1) therefore do not preclude this Court's exercise of jurisdiction. Subsection (ii), which prohibits courts from reviewing "a decision by the Attorney General to invoke the provisions of [§ 1225(b)(1)]," also has limited application here. To the extent Petitioner challenges his classification as an "arriving alien" under § 1225(b)(1), it is for the purposes of his detention, not his removal proceedings. *See* Doc. 1 ¶¶ 28, 31, 41. Section 1252(e) also does not

limit this Court's jurisdiction because Petitioner does not seek judicial review of any order to exclude or discretionary determination made under § 1225(b)(1).

The thrust of Petitioner's claim relates to his detention status and arises under the Due Process Clause of the Fifth Amendment. S*ee* Doc. 1 ¶¶ 38-41. This falls squarely within this Court's habeas corpus jurisdiction. *See* 28 U.S.C. § 2241; *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) ("Challenges to immigration detention are properly brought directly through habeas.") (citing *Zadvydas*, 533 U.S. at 687-88).

### B. Petitioner Is an "Arriving Alien" Subject to Mandatory Detention Under § 1225(b)(1)

Petitioner entered the country under the CFRP Program, established pursuant to § 1182(d)(5)(A). The INA's implementing regulations regarding parole confirm that when parole expires or is terminated, the noncitizen "shall be restored to the status that he or she had at the time of parole." 8 C.F.R. § 212.5(e). Additionally, 8 C.F.R. § 1.2 makes clear that parolees are "arriving aliens" and remain so even after any such parole is terminated or revoked. At least one other court in this district has found that a noncitizen detained by DHS upon revocation of his parole returned to his previous status under § 1225 pending expedited removal. *Valera-Marin v. Lyons*, No. 2:25-cv-00914-KG-GBW, 2025 WL 3687978, at *3 (D.N.M. Dec. 19, 2025) (Gonzales, J.). The fact that Petitioner remained in the United States after his parole expired does not subject him to § 1226, as the plain language of the statute and regulations makes clear that after his parole ended, Petitioner once again became subject to the provision of the INA mandating his detention. *See Mendibaev v. Lyons*, No. 1:25-cv-01308-DHU-GBW, 2026 WL 917457, at *4 (D.N.M. Apr. 4, 2026).

**C. The Due Process Clause Applies to Petitioner and Requires an Opportunity for Release on Bond**

1. <u>"Entry Fiction" Limits Petitioner's Due Process Rights with Respect to Admission and Parole, Not Necessarily Pre-Removal Detention</u>

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. The Due Process Clause's protections extend to **all** persons **within the United States**, including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693 (emphasis added). However, under the "entry fiction," noncitizens "who arrive at ports of entry— even those paroled elsewhere in the country for years pending removal—are treated for due process purposes as if stopped at the border." *Thuraissigiam*, 591 U.S. at 139 (citation and internal quotation omitted); *accord Sierra v. INS*, 258 F.3d 1213, 1218 (10th Cir. 2001). This is because such noncitizens cannot be said to have "effected an entry" into the country, so they have "only those rights regarding admission that Congress has provided by statute." *Thuraissigiam*, 591 U.S. at 140. In *Thuraissigiam*, the Supreme Court applied this principle to a noncitizen challenging his expedited removal after he was detained just twenty-five (25) yards over the border after entering without inspection. *See id.*

The Tenth Circuit has also applied the entry fiction in the parole context, holding that noncitizens possess no liberty interest in being released on parole and therefore limiting their due process rights regarding parole to the procedures authorized by Congress. *Sierra*, 258 F.3d at 1218-19. The facts in *Sierra* center around a Cuban citizen who was paroled into the United States, later convicted of several crimes, ordered removed, and remained detained when Cuba would not accept him back. *Id.* at 1216. After he was initially approved for parole, that approval was withdrawn after an alleged fight while in prison. *Id.* He filed a habeas petition, arguing he was entitled to a hearing

on the withdrawal of his parole. *Id.* Applying the entry fiction and limiting his due process rights, the Tenth Circuit dismissed his petition because "[n]either the statutes nor the governing regulations require a hearing on parole withdrawal." *Id.* at 1219.

Petitioner in this case has not "effected an entry" into the country, like the petitioner in *Thuraissigiam*, and was instead paroled, like the petitioner in *Sierra*. Applied to Petitioner, the above-cited case law makes clear that Petitioner's due process rights regarding his parole and his admission into the country are limited to the procedures authorized by Congress in the relevant statutes and regulations. However, the similarities stop there, and there are important distinctions that limit the applicability of *Thuraissigiam* and *Sierra*. First, Petitioner does not challenge the removal proceedings against him, nor does he argue he is entitled to be released on parole. Instead, he argues that during his nearly twenty (20) years of living in the United States, he accrued a general liberty interest which requires that any deprivation of his liberty be narrowly tailored to serve a compelling government interest. Doc. 1 ¶¶ 39-40 (citing *Reno v. Flores*, 507 U.S. 292, 301-02, 113 S.Ct. 1439 (1993); *Demore v. Kim*, 538 U.S. 510, 528, 123 S.Ct. 1708 (2003)). [2]

Second, Petitioner was not arrested twenty-five (25) yards from the border shortly after entering, like the petitioner in *Thuraissigiam*, but rather was arrested in Texas after living in this country freely for nearly two decades. And unlike the petitioner in *Sierra*, Petitioner here does not have a final order of removal.[3] These factual distinctions are important. To apply the entry fiction

---

[2] Some district courts grappling with similar facts have more narrowly read *Thuraissigiam* as protecting Congress's "sovereign prerogative" over admission and exclusion and limiting noncitizens' due process rights regarding **admission**, not necessarily regarding **pre-removal detention**. *See, e.g.*, *Rincon v. Hyde*, 810 F.Supp.3d 101, 110-11 (D. Mass. 2025); *Walizada v. Trump*, No. 2:25-cv-00768, 2025 WL 3551972, at *16 (D. Vt. Dec. 11, 2025).

[3] Petitioner here does have a criminal history, like the Petitioner in *Sierra*, but it has nothing to do with his parole, which had expired already, nor does it seem to be related to the circumstances of his re-detention. Respondents do not raise his criminal history in their briefing, so the Court finds it irrelevant.

in this case "requires a much greater sleight of hand than is provided for in those prior cases." *Rincon*, 810 F.Supp.3d at 112; *see also Tenamasa-Lema v. Hyde*, 810 F.Supp.3d 244, 253 (D. Mass. 2025) ("[E]ven *without* disturbing the metaphysical 'entry fiction' that may obstruct, in some senses, our ability to admit that a non-citizen is really 'here,' one can still constitutionally recognize Petitioner's actual life in this country—his years as part of our community—[is] not so easily set aside."). These facts further support distinguishing *Thuraissigiam* and *Sierra* and finding that Petitioner's due process rights with respect to his **detention pending removal proceedings** flow not from the entry fiction but from his geographic presence inside the country.

It is true that detention during removal proceedings has been upheld as "a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523. Nevertheless, the Due Process Clause imposes limits even on mandatory immigration detention; it must "bear[] a reasonable relation to the purpose for which the individual was committed." *Id.* at 527 (quoting *Zadvydas*, 533 U.S. at 690). The petitioners in *Demore* challenged their detention under 8 U.S.C. § 1226(c), which at the time, mandated detention for noncitizens convicted of aggravated felonies. The purpose of detention, the Supreme Court found, was to ensure that noncitizens convicted of crimes appeared for immigration hearings and did not remain at large in the United States unlawfully. *Id.* at 528. No such justification applies to noncitizens like Petitioner, whose detention bears no relation to his criminal history, who possesses significant ties within the United States, and who has a viable defense to removal and path to lawful permanent residency under the Cuban Adjustment Act. *See* Doc. 1 ¶¶ 36, 39, 42; *see also Rincon*, 810 F.Supp.3d at 113-14 (distinguishing *Demore*). Nor has the Government articulated how mandatory detention of noncitizens who entered this country via the CFRP Program is reasonably related to ensuring appearance in immigration court or any other immigration purpose. *See* Doc. 10. Accordingly, just like any other

noncitizen present within the United States, the Court finds that Mr. Perez Hernandez's detention is limited by the demands of the Due Process Clause.

2. Petitioner Accrued a Liberty Interest in Freedom from Immigration Detention[4]

Having established that Petitioner is protected by the Due Process Clause for the purposes of his detention, we now must determine the contours of that protection in this case. Courts analyze procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivations of that protected liberty interest accords with the Constitution. *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904 (1989).

The Supreme Court has said multiple times that individuals have a liberty interest in their conditional release. *See, e.g., Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593 (1972). And courts have answered the first question—whether there is a protected liberty interest—by comparing the facts of the case before them to those in *Morrissey*, where release allowed the individual "to do a wide range of things" characteristic of everyday life, including being "with family and friends and [forming] the other enduring attachments of normal life." *Id.* at 482.

Like the parolee in *Morrissey*, Petitioner's parole allowed him to do a wide range of things. Petitioner lived with his wife and children and ran his own transportation business to provide for them. Doc. 1 ¶¶ 25-26, 33. Petitioner has also sought lawful status in this country by filing an Application for Adjustment of Status under the Cuban Adjustment Act. *Id.* ¶ 34. These relationships and obligations are the very kind contemplated in *Morrissey* and demonstrate the

---

[4] The Court recognizes that Petitioner has no liberty interest in release on parole. *See Sierra*, 258 F.3d at 1218. However, the Court distinguishes between the specific interest in being paroled and a more general liberty interest in freedom from immigration detention while removal proceedings remain pending.

liberty interest accrued by Petitioner during the nearly twenty (20) years he has lived with relative freedom in this country.

3. Applying the *Mathews v. Eldridge* Framework, the Due Process Clause Requires that Petitioner Be Provided a Bond Hearing

In analyzing what procedures sufficiently protect due process in the immigration context, courts have applied the framework established in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893 (1976). *See, e.g., Landon v. Plasencia*, 459 U.S. 21, 34, 103 S.Ct. 321 (1982); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022) (assuming without deciding that *Mathew* applies); *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020); *Hernandez v. Cremer*, 913 F.2d 230, 238 (5th Cir. 1990). Several district courts within the Tenth Circuit, too, have applied *Mathews* when addressing due process claims related to immigration detention. *See, e.g., Hernandez-Parrilla v. De Anda-Ybarra*, No. 2:25-cv-01224-MIS-KK, 2025 WL 3632769, at *5 (D.N.M. Dec. 15, 2025); *Barreno v. Baltasar*, No. 025-cv-03017-GPG-TPO, 2025 WL 3190936, at *3 (D. Colo. Nov. 14, 2025); *Garcia Cortes v. Noem*, No. 1:25-cv-02677-CNS, 2025 WL 2652880, at *4 (D. Colo. Sept. 16, 2025). To determine the process due to an individual, *Mathews* requires the Court to balance (1) the private interest affected by the official action, (2) the risk of erroneous deprivation of such interest through the procedures used and the probable value of additional or different procedural safeguards, and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail. 424 U.S. at 335.

Turning to the first *Mathews* factor, the Court finds that Petitioner has a significant private interest in remaining free from detention after living freely outside of immigration custody. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner was out of immigration custody for over seventeen (17) years before being

re-detained by ICE, during which time his interest in release grew even stronger as he worked and lived freely alongside family and other community members. His private interest in freedom from detention is therefore substantial.

The second *Mathews* factor is a closer call. The risk of erroneous deprivation is considerable in this case where ICE previously paroled Petitioner under the CFRP Program, Petitioner is eligible for adjustment of status, and the Government re-detained Petitioner despite significant family and community ties in the United States. On the other hand, as the Government points out, Petitioner is properly subject to mandatory detention under the statute. *See* Doc. 10 at 4, 11. In considering the probable value of additional or different procedural safeguards, the equities tip in favor of a bond hearing, rather than release, where the Petitioner still bears the burden of showing why release on bond is warranted in this case. This helps ensure Petitioner is not erroneously deprived of his liberty interest in release while recognizing that detention is mandated by the statute.

Finally, the third *Mathews* factor favors Petitioner as well. While the Government certainly has a strong interest in enforcing its immigration laws, its interest in detaining noncitizens absent a rational reason for doing so is low. The justification for mandatory detention of "arriving aliens" subject to expedited removal carries little weight in this case, where Petitioner has developed significant ties to the United States and where his removal proceedings are not being dealt with in an expedited fashion. Requiring a bond hearing does not impose a significant fiscal or administrative burden on the Government, nor does it undermine the Government's "sovereign prerogative . . . to decide which [noncitizens] to admit[,]" *Landon*, 459 U.S. at 32, as Petitioner's removal proceedings—and the Government's discretion over them—will continue regardless of his detention status.

On balance, the Court finds that under the three *Mathews* factors, the Due Process Clause entitles Petitioner to an opportunity to seek release on bond at a custody redetermination hearing. However, given that the statutory scheme applicable to Petitioner contemplates mandatory detention, the Court declines to shift the burden of proof to the Government at said hearing. As is typical of custody redetermination hearings in immigration court, the Petitioner will bear the burden of demonstrating that he is not a flight risk or a danger to his community.

In requiring a bond hearing, this Court does **not** interfere with Petitioner's removal proceedings in immigration court or make any finding regarding his admissibility and/or eligibility for parole. Instead, the Court limits itself to assessing Petitioner's statutory and constitutional rights regarding pre-removal detention, which falls well within its authority to do. *See Zadvydas*, 533 U.S. at 687; *Soberanes*, 388 F.3d at 1310 ("Challenges to immigration detention are properly brought directly through habeas.").

## IV.
## CONCLUSION

For the reasons stated above, Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED IN PART**.

**IT IS THEREFORE ORDERED** that Respondents provide Petitioner an individualized bond hearing before a neutral Immigration Judge ("IJ") within 7 days of entry of this Order. If Petitioner does not receive such a hearing on or before Friday, August 14, 2026, he shall be immediately released. The assigned IJ is hereby ordered not to deny bond based solely on a lack of jurisdiction under the Board of Immigration Appeals' decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).

**IT IS FURTHER ORDERED** that the parties submit a joint status report to the Court no later than Monday, August 17, 2026, confirming whether a bond hearing was held and the result of said hearing.

The Court will issue a separate final judgment but retain jurisdiction.

**IT IS SO ORDERED.**

_____
HONORABLE DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE